UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fausto O.I.,[1]

        Petitioner,                      Case No. 26-cv-854 (MJD/LIB)

v.                                 **REPORT AND RECOMMENDATION**

Kristi Noem, et al.,

        Respondents.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Fausto O.I.'s Petition for a writ of habeas corpus. [Docket No. 2]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Fausto O.I.'s Petition for a writ of habeas corpus, [Docket No. 2], be **GRANTED**, as set forth herein; that Respondents be ordered to release Petitioner within forty-eight hours of any Order adopting the present Report and Recommendation; and that Respondents be ordered to show cause why they failed to comply with the Court's January 30, 2026, Order.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record").

I.      Background

Petitioner is a native and citizen of Ecuador. (See Petition [Docket No. 2] ¶¶ 1, 26–31). Petitioner entered the United States without inspection in or around November 30, 2023. (Id.). Upon arriving in the United States, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") officers. (Id.). Petitioner was charged as being "an alien present in the United States who has not been admitted or paroled" under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, codified as 8 U.S.C. § 1182(a)(6)(A)(i). (Notice to Appear [Docket No. 2-1]).

On December 1, 2023, Petitioner was released from ICE's custody subject to certain conditions outlined in his Order of Release on Recognizance. (Petition [Docket No. 2] ¶¶ 1, 26–31; Exhibit B [Docket No. 2-2]).[3] The Order effectuating Petitioner release indicated that removal proceedings had been commenced against Petitioner under 8 U.S.C. § 1229a. (Exhibit B [Docket No. 2-2]).

On October 29, 2024, Petitioner filed an Application for Asylum and Withholding of Removal with the immigration court which also remains pending. (Petition [Docket No. 2] ¶ 27).[4] Petitioner's asylum application remains pending. (Id.). Petitioner was issued a valid work permit based on his pending application for asylum. (Id.).

On January 9, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in Minnesota. (Respondents' Mem. [Docket No. 5]; Petitioner's Reply [Docket No. 6]

---

[3] Those condition provided that Petitioner could not change his place of residence without first securing permission; could not violate any local, state, or federal laws; and was required to assist immigration officials in obtaining any necessary travel documents. (Id.).

[4] Prior to Petitioner's arrival in the United States, a Petition of Alien Relative was filed on Petitioner's behalf with the United States Citizenship and Immigration Services. (Petition [Docket No. 2] ¶ 28). A petition for alien relative is a form to initiate a process through which a United States citizen or lawful resident may help "an eligible relative apply to immigrate to the United States and apply for a Green Card." Lauro M. v. Bondi, No. 26-cv-134 (SRN/DJF), 2026 WL 115022, at *1 (D. Minn. Jan. 15, 2026).

at 1).[5] Upon being arrested in Minnesota, Petitioner was immediately transferred to a detention facility in Texas. (Petition [Docket No. 2] ¶ 31). On January 26, 2026, Petitioner was transferred to a detention facility in New Mexico, where he was detained at the time the present Petition was filed. (Id.; Petitioner's Reply [Docket No. 6] at 2).

Petitioner, through counsel, initiated this habeas action on January 30, 2026, by filing his Petition. [Docket No. 2]. Petitioner argues that he is being unconstitutionally detained because Respondents have unlawfully subjected him to mandatory detention under 8 U.S.C. § 1225(b) without the possibility of a bond hearing. (See Id.).[6] Petitioner requests that this Court order his immediate release or in the alternative order Respondents to provide Petitioner with a bond hearing. (See Id. at Prayer for Relief ¶ 3). Petitioner asserts that his immediate release is warranted because Respondents have not produced any warrant authorizing his arrest or detention. (See Petitioner's Reply [Docket No. 6]).

On January 30, 2026, the Honorable Michael J. Davis, the District Court Judge presiding over the present case, issued an Order requiring Respondents to answer the present Petition and

---

[5] The Petition asserts that Petitioner was initially detained on January 12, 2026. (Petition [Docket No. 2] ¶ 17, 30). However, Petitioner's reply memorandum and Respondents' memorandum both indicated that Petitioner was arrested on January 9, 2026. (Respondents' Mem. [Docket No. 5]; Petitioner's Reply [Docket No. 6] at 1). The Court uses the January 9, 2026, date as it comports with the other dates provided by the parties. The Court notes, however, that regardless of whether Petitioner was arrest on January 9, 2026, or January 12, 2026, it would not alter the Court's present recommendations.

[6] From the record now before the Court, it does not appear that Petitioner had requested a bond hearing at the time he filed the present Petition. The Petitioner, however, initiated this proceeding based on Respondents categorical policy decision (discussed in more detail below) that individuals, such as Petitioner, in immigration-related detention are not entitled to a bond hearing. Respondents do not argue that the present Petition is premature, and indeed, in the present action, Respondents continue to hold fast to their categorical policy decision. For the sake of completeness, the Court finds that the present Petition is not premature. It would serve no purpose to dismiss this action only to have Petitioner reraise the action after specifically requesting a bond hearing in immigration court when even here Respondents argue that the categorical policy decision is correct, despite hundreds of Courts across the country telling them otherwise. Moreover, Petitioner challenges not only Respondents decision that he is not entitled to a bond hearing but also the constitutionality of his detention itself. Petitioner is presently detained, and thus, he may challenge the constitutionality of that detention. Other Courts have granted habeas relief in circumstances materially similar to the present case even when the petitioner had not requested a bond hearing in immigration court. See, e.g., Gonzalo R.I. v. Bondi, No. 26-cv-248 (MJD/LIB), 2026 WL 191034, at *2 n.5 (D. Minn. Jan. 22, 2026) (citing Avila v. Bondi, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025)), report and recommendation adopted, 2026 WL 198793 (D. Minn. Jan. 25, 2026).

enjoining Respondents from removing Petitioner from the District of Minnesota until a final decision is made on the present Petition. (Order [Docket No. 4]). That January 30, 2026, Order also required Respondents to immediately return Petitioner to Minnesota if Respondents had already removed Petitioner from Minnesota. (Id.).

On January 31, 2026, Petitioner was transferred from the detention facility in New Mexico back to the detention facility in Texas. (See ICE Online Detainee Locator System at https://locator.ice.gov/odls/#/search; Respondents' Mem. [Docket No. 5] at 2). At the time Respondents filed their memorandum, Petitioner was detained at the detention facility in Texas. (See ICE Online Detainee Locator System at https://locator.ice.gov/odls/#/search; Respondents' Mem. [Docket No. 5] at 2). On February 4, 2026, Petitioner's counsel filed a "Notice of Status Report" informing the Court that Petitioner "remains detained by Respondents at the Cibola County Correctional Center in Milan, New Mexico," and therefore, it appears that Respondents have again transferred Petitioner back to New Mexico. (Petitioner's Notice [Docket No. 7]).

**II.   Jurisdiction**

Respondents first argue that this action must be transferred to the Western District of Texas because Petitioner is currently detained in Texas and because Petitioner was not detained inside the District of Minnesota when the present action was filed. Respondents are incorrect.

For a Court to entertain a habeas petition under typical circumstances, the petitioner is required to file the habeas petition in the district in which the petitioner is then-presently detained at the time the petition is filed with the proper respondent being the individual who is petitioner's immediate custodian, which is commonly the warden of the facility where the petitioner is detained. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Id. at 448, 450 n.18 (referring to these requirements as "the immediate custodian and district of confinement

rules"); 28 U.S.C. §§ 2242, 2241(a). These requirements exist because a writ of habeas corpus "does not act upon the [detainee] who seeks relief, but upon the person who holds [the detainee] in what is alleged to be unlawful custody," Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 494–95 (1973), and the district court must "have jurisdiction over" that custodian, Padilla, 542 U.S. at 434.[7]

Although the district of a person's place of confinement is traditionally the most common venue for a person to file a habeas petition, the United States Supreme Court had made clear that the location of the individual at the time a habeas petition is filed is not some dowsing rod pointing to the only correct district. See Braden, 410 U.S. at 494–95. For example, an exception to the general "immediate custodian" and "district of confinement" rules applies when a petitioner, at the time their petition is filed, "is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." Padilla, 542 U.S. at 450 n.18; see Ozturk v. Hyde, 136 F.4th 382, 392 (2d Cir. 2025) (quoting Padilla). This exception applies with equal force "where the Government was not forthcoming with respect to the identity of the custodian and the place of detention." Padilla, 542 U.S. at 454.

Under this exception, the proper district in which to file the habeas petition is "in the district court from whose territory the petitioner had been removed," Id., and "the naming of a more remote custodian—[such as] the Secretary of Homeland Security [in immigration related habeas proceedings]—satisfies the statutory requirements." Ozturk, 136 F.4th at 392 (quoting Demjanjuk v. Meese, 784 F.2d 1114, 1116 (D.C. Cir. 1986)). This exception exists to forestall

---

[7] It is important to note that these rules "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction." Padilla, 542 at 451. (Kennedy, J., concurring). The rules discussed here are "best understood as a question of personal jurisdiction or venue." Id. However, a Court's consideration of the "immediate custodian" and "district of confinement" rules is not bound by the more rigid rules governing venue and personal jurisdiction; rather, the Court's application of these habeas rules merely takes into consideration some of the same equitable concerns underlying the doctrines of venue and personal jurisdiction. See Id. at 451–52.

forum shopping by the Government and "[t]o help prevent the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum, only to find that it lies elsewhere[.]" Eisel v. Sec'y of the Army, 477 F.2d 1251, 1258 (D.C. Cir. 1973); see Abdiselan A.A. v. Bondi, No. 26-cv-358 (JRT/ECW), 2026 WL 161526, at *1 (D. Minn. Jan. 21, 2026) (quoting Eisel); Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 447–48 (3d Cir. 2021) (discussing how "[t]hese forum-shopping concerns intensify when the [habeas] petitioner is an ICE detainee").

The Court finds that the circumstances of the present case fit squarely within the above discussed exceptions. Petitioner was arrested in Minnesota which is also where Petitioner retained counsel to challenge his arrest and detention. Petitioner was then—at Respondents' unilateral direction—immediately transferred to Texas without prior notice. Petitioner was then transferred to a detention facility in New Mexico, again without proper notice and again at Respondents' unilateral direction. Petitioner remained in New Mexico for less than a week before he was, without proper notice, transferred back to Texas. Now it appears that Petitioner has been transferred back to New Mexico. Notably, at the time Petitioner was transferred from New Mexico to Texas, Petitioner was already represented by counsel and had initiated this action, but there is no indication in the record that Respondents made any effort to inform Petitioner's counsel of Petitioner's transfer. This is exactly the type of situation which emphasizes the need for the unknown custodian and unknown district of confinement exceptions.

The application of this exception to the present case is bolstered by two additional considerations. First, all of Petitioner's rapid movement from one place of detention to the next has been effectuated by Government-controlled transfers. The Government may not use the uncertainty created by its own actions to shop for a forum of its choosing. Second, the unknown

nature of Petitioner's immediate custodian and district of confinement during the relevant period is illustrated by the disconnect between Respondents' argument and Respondents' assertion that this case should be transferred to the Western District of Texas. The cases and arguments upon which Respondents rely stand for the assertion that under typical circumstances the proper place to file a habeas petition is the district of confinement at the time the habeas petition is filed, but Respondents ask that this case be transferred to the Western District of Texas when even Respondents' own memorandum acknowledges that Petitioner was detained in New Mexico when the present Petition was filed. The unknown nature of Petitioner's immediate custodian and district of confinement is made even more opaque by the fact that Respondents have unilateral possession of the information regarding Petitioner's location at any given time, but from the record now before the Court, Respondents have made no effort to provide notice to Petitioner or his counsel about Petitioner's transfers between facilities.

Under the above discussed exception, the Court finds that this District was a proper forum for Petitioner to file his Petition. Petitioner was arrested in Minnesota, had lived in Minnesota for several years, and had retained counsel in Minnesota to challenge his arrest and detention. Petitioner left the District of Minnesota only because Respondents secreted him away to Texas before rapidly transferring him back and forth between facilities. Moreover, any necessary information, witnesses, or records regarding Petitioner's immigration status are most likely be located in Minnesota. Furthermore, "[t]he decision to arrest and detain [Petitioner] was directed to personnel within this District, and therefore witnesses and information about the manner of his arrest would also be found in this District." Jose A. v. Noem, No. 26-cv-480 (JMB/ECW), 2026 WL 172524, at *2 (D. Minn. Jan. 22, 2026). Each of these factors and the overall circumstances of the present case weigh heavily in favor of finding that this District was

a proper forum for Petitioner to file his habeas Petition. See, e.g., Jose A., 2026 WL 172524, at *2; Abdiselan A.A. v. Bondi, No. 26-cv-358 (JRT/ECW), 2026 WL 161526, at *2 (D. Minn. Jan. 21, 2026); Tah L. v. Trump, No. 26-cv-171 (MJD/SGE), 2026 WL 184524, at *4 (D. Minn. Jan. 19, 2026), report and recommendation adopted as modified, 2026 WL 184529 (D. Minn. Jan. 23, 2026); Flores-Linares v. Bondi, No. 26-cv-298 (SJB), 2026 WL 179208, at *5 (E.D.N.Y. Jan. 22, 2026).

Other Courts have reached similar conclusions in cases where a petitioner, arrested and detained in District A, is immediately transferred to District B but filed a habeas petition in District A after having been transferred to District B. See Jose A., 2026 WL 172524, at *2; Flores-Linares, 2026 WL 179208, at *5. As another Court in this District observed in circumstances materially similar to the present case, "[t]ransferring venue would prolong both [Petitioner's] detention and the adjudication of his claims" unnecessarily. Jose A., 2026 WL 172524, at *2.

> Further, venue should not be transferred simply because a petitioner was unable to file their petition prior to transfer, particularly when that transfer was not at a petitioner's request, is wholly outside of their control, and occurs in a very short time after arrest. Transferring venue solely on the basis that a petitioner was transferred, and thereby currently detained elsewhere, could also have the effect of incentivizing forum shopping, as Respondents could quickly transfer detained individuals to a district of their choosing

Id. The undersigned finds this rationale persuasive and applicable to the present case with equal force.

That this District is a proper forum for the present Petition is further supported by the rational underlying Braden. As the Supreme Court explained, "[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the [petitioner] be brought before the court for a hearing on his claim, or requiring that he be

8

released outright from custody, even if the [petitioner] himself is confined outside the court's territorial jurisdiction." Braden, 410 U.S. at 495. In the present case, the Respondents can undoubtable be reached through service of process.[8]

In summation, the undersigned concludes, "as other judges in this District have, that when 'Government-controlled transfers,' like the one in this case," are effectuated without proper notice "and before [meaningful] communication with counsel is possible such conduct risks defeating timely judicial review," and thus, under those circumstances, the original district in which the petitioner was arrested remains a proper forum to seek habeas relief. Abdiselan A.A., 2026 WL 161526, at *2 (cleaned up) (quoting E.E. v. Bondi (JWB/DTS), Order [Docket No. 7] at 5 (D. Minn. Jan. 17, 2026)). To hold otherwise would create a legal quagmire for the sake of procedural niceties. Accepting Respondents' argument would require counsel for a petitioner in immigration-related habeas proceedings such as this case to speculate as to the whereabouts of their client in the face of rapid, Government-controlled transfers; to delay filing a habeas petition until the Government, at a time of its own choosing, decided to inform counsel of the petitioner's ultimate location after the rapid transfers are all concluded; or to risk the petition being summarily rejected as having been brought in an inappropriate forum. Such a circumstance has no place in habeas litigation challenging the legality of detention, especially when, like here, the arguments raised in support of that detention have been overwhelming rejected by Courts across the nation.

---

[8] The Court's findings here are also supported by the Supreme Court's definition of "custodian" as that term is used in the relevant habeas statutes: "This custodian, moreover, is 'the person' with the ability to produce the prisoner's body before the habeas court" or who can release the individual if "no sufficient reasons" for detention is shown. Padilla, 542 U.S. at 435. Respondents fit squarely within this definition regarding Petitioner. If it is demonstrated that habeas relief is appropriate in the present case, any writ issued granting Petitioner his requested relief would be directed at Respondents not the warden at the presently unknown facility where Petitioner happens to be detained. Put differently, if habeas relief is granted in the form of Petitioner's release from detention, it will be Respondents who effect Petitioner's return to Minnesota and his release; it will not be the warden of the facility at which Petitioner is detained. Moreover, if relief is granted in the form of a bond hearing, it will be Respondents who effect that bond hearing; the warden of the detention facility has no authority over and plays no part in such bond hearings.

### III. Constitutionality of Petitioner's Detention

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

In the United States, immigration law permits "authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings." Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, "the Government" is authorized "to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." Id. at 289. Government officials are also authorized "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Id. Although both § 1225 and § 1226 authorize the detention of noncitizen individuals during the course of immigration proceedings, those provisions operate in substantially different manners. See Id. "Under 8 U.S.C. § 1225(b)(2), which applies to 'an alien seeking admission' to the United States, detention while immigration proceedings are conducted is mandatory," but "under 8 U.S.C. § 1226(a), which

10

applies to an alien who is unlawfully present in the United States, detention is discretionary and may only be imposed after a hearing." Mahamed C.A. v. Noem, No. 25-cv-4551 (MJD/JFD), 2025 WL 3771299, at *1 (D. Minn. Dec. 16, 2025), report and recommendation adopted, 2025 WL 3754012 (D. Minn. Dec. 29, 2025).

For decades, the United States government treated individuals in Petitioner's circumstances as aliens unlawfully present in the United States who, if arrested, were subject to discretionary detention pursuant to 8 U.S.C. § 1226. See, e.g., Eliseo A.A. v. Olson, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025).[9] Those individuals were entitled to a bond hearing. See, e.g., Jennings v. Rodriguez, 583 U.S. 281, 286–306 (2018).

However, in December 2025, the government made an abrupt change of course. Respondents now argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225[10] pursuant to recent guidance by the Board of Immigration Appeals finding that all aliens present in the United States without proper authorization are subject to mandatory detention under § 1225.[11]

---

[9] Detention under § 1226(a) is often referred to a discretionary detection. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "As long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.' Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citations omitted) (ellipses in original).

[10] Detention under § 1225 is often referred to as mandatory detention. Section 1225 applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," and all such individuals are deemed for purposes of § 1225 to be "an applicant for admission." § 1225(a)(1). "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. Unlike § 1226, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id. at 297. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," and these individuals are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. "Section 1225(b)(2) is broader" operating "as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Id. Individuals covered by § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." Id. (quoting § 1225(b)(2)(A)) (brackets in Jennings).

[11] The BIA's decision appears to be a consequence of a July 2025 policy announcement by ICE and the Department of Homeland Security providing similar guidance. See Mahamed C.A., 2025 WL 3771299, at *2 (citing Santos M.C. v. Olson, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2 (D. Minn. Nov. 25, 2025)).

11

The present Petition and the arguments raised by both sides are substantively identical to the numerous other immigration-related habeas petitions filed in this District in which individuals argue that they are being unconstitutionally subjected to mandatory detention under § 1225. Respondents continue to raise the same argument despite the fact that their arguments have been soundly rejected by nearly every Court which has substantively considered the argument, including the undersigned and the overwhelming majority of district judges in this District who has substantively considered the issue. See, e.g., Rosa F.L.T. v. Bondi, No. 26-cv-807 (KMM/DTS), 2026 WL 254584, at *2 (D. Minn. Feb. 1, 2026); Gonzalo R.I. v. Bondi, No. 26-cv-248 (MJD/LIB), 2026 WL 191034, at *3 (D. Minn. Jan. 22, 2026), report and recommendation adopted, 2026 WL 198793 (D. Minn. Jan. 25, 2026); Anibal A.A. v. Bondi, No. 26-cv-111 (MJD/LIB), 2026 WL 184551, at *3 (D. Minn. Jan. 20, 2026), report and recommendation adopted, 2026 WL 194041 (D. Minn. Jan. 23, 2026); Jessica C. v. Bondi, No. 26-cv-85 (ECT/LIB), 2026 WL 114290, at *2 (D. Minn. Jan. 15, 2026); Fuentes v. Olson, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *1–3 (D. Minn. Dec. 9, 2025) (Provinzino, J.) (collecting cases); Jose J.O.E. v. Bondi, 797 F. Supp. 3d 957, 968–70 (D. Minn. 2025); Ramon R.C. v. Samuel J. Olson, No. 25-cv-3811 (ECT/LIB), 2025 WL 3900425, at *5–8 (D. Minn. Dec. 30, 2025), report and recommendation adopted, 2026 WL 45113 (D. Minn. Jan. 7, 2026); Barco Mercado v. Francis, No. 25-cv-6582 (LAK), ___ F. Supp. 3d ___, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025); Victor F.M. v. Bondi, No. 25-cv-4778 (ECT/SGE), 2026 WL 25968, at *2 (D. Minn. Jan. 5, 2026); Santos M.C. v. Olson, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2–3 (D. Minn. Nov. 25, 2025) (Schilz, C.J.); Andres R.E. v. Bondi, No. 25-cv-3946 (NEB/DLM), 2025 WL 3146312, at *3 (D. Minn. Nov. 4, 2025) (Brasel, J.); Belsai D.S. v. Bondi, No. 25-cv-3682 (KMM/EMB), ___ F. Supp. 3d ___, 2025 WL 2802947, at *5 (D. Minn.

Oct. 1, 2025) (Menendez, J.); Eliseo A.A. v. Olson, No. 25-cv-3381 (JWB/DJF), ___ F. Supp. 3d ___, 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025) (Blackwell, J); Francisco T. v. Bondi, No. 25-cv-03219 (JMB/DTS), 2025 WL 3236513, at *3 (D. Minn. Nov. 19, 2025) (Bryan, J.); Avila v. Bondi, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *6 (D. Minn. Oct. 21, 2025) (Tunheim, J.); E.M. v. Noem, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *4–6 (D. Minn. Nov. 12, 2025) (Nelson, J.); Ramirez Valverde v. Olson, No. 25-cv-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025); J.A.M. v. Streeval, No. 25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025); Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1151 (D. Minn. 2025).

The undersigned finds no reason to depart from the well-reasoned judicial consensus discussed above. "For decades, the government took the position that people in Petitioner's situation were *not* subject to mandatory detention," Mahamed C.A., 2025 WL 3771299, at *2 (emphasis in original), and the government's new interpretation departs from decades of consistent statutory interpretation and the plain meaning of the relevant statutory text. There is simply no reasonable basis upon which this Court could conclude that Petitioner—who at the time of his arrest had already been residing in the United States for more than two years—is an "alien seeking admission" subject to mandatory detention under § 1225(b)(2).[12]

---

[12] "As other courts have observed, the use of the verb 'seeking' in § 1225(b)(2)(A) denotes an active and present effort, such that an alien seeking admission is a noncitizen who, at the time of his arrest, is actively and presently pursuing inspection and authorization by an immigration officer to lawfully enter the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting Ramirez Valverde v. Olson, No. 25-cv-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025)). "'Seek' is an active verb, not a type of status that narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting J.A.M. v. Streeval, No. 25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025)). As another Court analogized, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." Santos M.C., 2025 WL 3281787, at *3 (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)). "Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there." Lopez Benitez, 795 F. Supp. 3d at 489.

13

Neither Petitioner's application for asylum nor the Petition for Alien Relative filed on Petitioner's behalf changes the outcome here. Having submitted an application for asylum or having had a petition for alien relative submitted on his behalf does not render Petitioner an alien "seeking admission" or subject him to mandatory detention under § 1225. See, e.g., Lauro M., 2026 WL 115022, at *1, 3; Martins de Oliveira v. Hyde, No. 25-cv-13940 (FDS), 2026 WL 74111, at *1, 3 (D. Mass. Jan. 9, 2026); Angel A.S.R. v. Noem, No. 26-cv-502 (JRT/EMB), 2026 WL 194515, at *1 (D. Minn. Jan. 26, 2026); Adriana M.Y.M. v. Easterwood, No. 26-cv-213 (JWB/JFD), 2026 WL 184721, at *1, 4–5 (D. Minn. Jan. 24, 2026); Diego L. v. Bondi, No. 26-cv-382 (JMB/DJF), 2026 WL 145206, at *3 (D. Minn. Jan. 20, 2026); Jhony A. v. Bondi, No. 26-cv-146 (JMB/LIB), 2026 WL 114334, at *3 (D. Minn. Jan. 15, 2026); Rosa F.L.T., 2026 WL 254584, at *2; Mayamu K. v. Bondi, No. 25-cv-3035 (JWB/LIB), 2025 WL 3641819, at *4 (D. Minn. Oct. 20, 2025) (citing Maldonado v. Olson, 795 F. Supp. 3d 1134, 1151 (D. Minn. 2025); Carlos Q.-A. v. Noem, No. 25-cv-1382 (MSN/WEF), 2025 WL 2783800, at *7 (E.D. Va. Sept. 30, 2025)); Mahamed C.A., 2025 WL 3771299, at *3.

In summation, Petitioner is not subject to § 1225(b)'s mandatory detention regime. Petitioner is thus entitled to habeas relief in the present proceedings.

The question remains as to the form of that relief. As his primary form of relief, Petitioner seeks release from custody.

In the present case, Respondents do not provide any evidence demonstrating that Petitioner's January 9, 2026, arrest or his subsequent detention were the result of a warrant. Nowhere in the record do Respondents proffer a basis for Petitioner's January 9, 2026, arrest or his subsequent detention other than § 1225's mandatory detention provision.

Unlike mandatory detention under § 1225, detention under § 1226 is predicated on the issuance of a warrant. See, e.g., 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases and discussing warrant requirement found in § 1226); Diego L. v. Bondi, No. 26-cv-382 (JMB/DJF), 2026 WL 145206, at *3 (D. Minn. Jan. 20, 2026) (collecting cases); Luis N. v. Bondi, No. 26-cv-226 (JMB/DLM), 2026 WL 115070, at *3 (D. Minn. Jan. 15, 2026). Absent a warrant an individual may not be arrested or detained under § 1226. See Ahmed M., 2026 WL 25627, at *3; Juan S.R. v. Bondi, 26-cv-5 (PJS/LIB), Order [Docket No. 8] (D. Minn. Jan. 12, 2026) (citing Ahmed M. and agreeing with the rationale therein); Diego L., 2026 WL 145206, at *3.

Where there exists no authority upon which an individual is detained, "ordering a bond hearing would treat the absence of statutory" authority in support of the individual's arrest or detention "as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more because it addresses the lawfulness of custody itself, not the adequacy of procedures that might attend some other, uninvoked challenge to detention." Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025); see Ahmed M., 2026 WL 25627, at *3. "Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings." Ahmed M., 2026 WL 25627, at *3 (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025)); see, e.g., Luis N., 2026 WL 115070, at *3; Diego L., 2026 WL 145206, at *3. Simply put, "[f]or detention that lacks a lawful predicate," such as Petitioner's detention in the present case, "release is an available and

appropriate remedy." Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS), Order [Docket No. 9] at 6 (D. Minn. Dec. 19, 2025); see Ahmed M., 2026 WL 25627, at *3; Luis N., 2026 WL 115070, at *3; Diego L., 2026 WL 145206, at *3.

In the present case, Respondents have wholly failed to identify any valid statutory basis for Petitioner's arrest or his present detention. Thus, Petitioner's detention is unlawful, and he is entitled to immediate release from said detention. See, e.g., Lauro M. v. Bondi, No. 26-cv-134 (SRN/DJF), 2026 WL 115022, at *3 (D. Minn. Jan. 15, 2026); Ahmed M., 2026 WL 25627, at *3; Juan S.R. v. Bondi, 26-cv-5 (PJS/LIB), Order [Docket No. 8] (D. Minn. Jan. 12, 2026); Garrison G. v. Bondi, No. 26-cv-172 (JMB/DJF), 2026 WL 115026, at *4 (D. Minn. Jan. 15, 2026); Luis N., 2026 WL 115070, at *3; Guadarrama Ayala v. Henkey, No. 25-cv-682 (AKB), 2025 WL 3754138, at *6 (D. Idaho Dec. 29, 2025); J.A.C.P. v. Wofford, No. 25-cv-1354 (KES/SKO), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); Lepe v. Andrews, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025); Martinez v. Hyde, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025); Membreno v. Thompson, No. 25-CA-1845-XR, 2026 WL 93980, at *5 (W.D. Tex. Jan. 7, 2026); Diego L., 2026 WL 145206, at *3; Adriana M.Y.M., 2026 WL 184721, at *1, 5; Diego L., 2026 WL 145206, at *3 (D. Minn. Jan. 20, 2026); Gonzalo R.I. v. Bondi, No. 26-cv-248 (MJD/LIB), 2026 WL 191034, at *5–6 (D. Minn. Jan. 22, 2026), report and recommendation adopted, 2026 WL 198793 (D. Minn. Jan. 25, 2026); Rosa F.L.T., 2026 WL 254584, at *2. On that basis, the undersigned recommends that Respondents be ordered to immediately release Petitioner following the issuance of any Order adopting the present Report and Recommendation, and the undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.

**IV.     Respondents' Noncompliance with Court's Prior Order**

As noted above, Judge Davis issued an Order on January 30, 2026, enjoining Respondents from removing Petitioner from the District of Minnesota until a final decision is made on the present Petition. (Order [Docket No. 4]). Judge Davis also ordered Respondents to immediately return Petitioner to Minnesota if Respondents had already removed him from Minnesota. (Id.).

Respondents have wholly failed to comply with Judge Davis's January 30, 2026, Order. Respondents were specifically directed to immediately return Petitioner to Minnesota, and they have failed to do so. It has now been five days since Judge Davis issued his order, and Petitioner continues to be detained outside the District of Minnesota. Even now, there still has been no indication by Respondents that Petitioner is being returned to Minnesota. Rather than comply with Judge Davis's Order to transfer Petitioner back to Minnesota, Respondents instead transferred Petitioner from New Mexico to Texas the day after Judge Davis issued his Order, and it appears Respondents have again transferred Petitioner back to New Mexico.

Because the record establishes that Respondents are in violation of the Court's January 30, 2026, Order, the undersigned recommends that Respondents be ordered to show cause why they should not be held in civil contempt for failing to return Petitioner to the District of Minnesota.

**V.     Objection Period**

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule

72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished because Petitioner would have been unlawfully detained for an additional month or more.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to two (2) days, and correspondingly, the Court reduces to one (1) day the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

## VI. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Fausto O.I.'s Petition for a writ of habeas corpus, [Docket No. 2], be **GRANTED**, as set forth herein;

2. Respondents be required to return Petitioner to Minnesota for immediate release;

3. Respondents be required to immediately release Petitioner from custody without subjecting him to conditions greater than those provided in the December 1, 2023, Order of Release on Recognizance;

4. Respondents be required to confirm Petitioner's release from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation;

5. Respondents be precluded from re-detaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances; and

6. Respondents be ordered to show cause why they should not be held in civil contempt for failing to return Petitioner to the District of Minnesota.

Dated: February 4, 2026                                s/ Leo I. Brisbois
                                                       Hon. Leo I. Brisbois
                                                       U.S. MAGISTRATE JUDGE